IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| DONALD F. WALTON, | : | CIVIL ACTION |
| UNITED STATES TRUSTEE, | : | NO. 2:08-CV-138-WCO |
| Region 21, | : | |
| | : | |
| Appellant, | : | BANKRUPTCY CASE |
| | : | NO. 08-20355-REB |
| v. | : | |
| | : | |
| CORNERSTONE MINISTRIES | : | |
| INVESTMENTS, INC., and | : | |
| OFFICIAL COMMITTEE OF | : | |
| UNSECURED CREDITORS, | : | |
| | : | |
| Appellees. | : | |

## ORDER

The captioned case is before the court for consideration of appellant's appeal from the United States Bankruptcy Court for the Northern District of Georgia [5-1]. The court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1).

### I.    Introduction

Appellant appeals the bankruptcy judge's denial without prejudice of appellant's request for the appointment of an examiner to investigate debtor's

allegedly improper business dealings.[1]  This case requires the court to interpret and apply 11 U.S.C. § 1104(c), the statutory provision governing the appointment of examiners in bankruptcy proceedings, which provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if--

---

[1] Specifically, appellant

> seeks the appointment of an examiner in this case to conduct an investigation into and provide a public, transparent and objective report on: (1) the events and circumstances leading to [d]ebtor's shift in late 2004 from making loans only to churches and other non-profit organizations to making loans to for-profit developers, including related entities and/or entities with which it had other business relationships and/or shared common officers or directors; (2) the extent, if any, to which this shift in [d]ebtor's business plan was motivated or influenced by self-dealing on the part of its officers, directors, or professional advisers; and (3) whether and to what extent purchasers of the [i]nvestor [b]onds were notified of this shift in [d]ebtor's business plan and whether and to what extent they may have claims against broker-dealers or others arising from their purchase and/or retention of the [i]nvestor [b]onds.

(Appellant's Br. 8).

> (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
>
> (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

Appellant argues that § 1104(c)(2) does not give a bankruptcy judge discretion to deny a U.S. trustee's request for appointment of an examiner when (1) the debtor's fixed, liquidated, unsecured debts exceed the statute's threshold amount of $5,000,000; (2) the court has not appointed a trustee; and (3) a plan has not been confirmed. Appellees argue that § 1104(c) allows the bankruptcy judge to decide whether an examiner is appropriate regardless of the amount of debt at issue, and that, in this case, the bankruptcy judge properly denied appellant's request because the appointment of an examiner would merely duplicate the efforts of the committee of unsecured creditors, while depleting the bankruptcy estate.

## II. Standard of Review

The court reviews the bankruptcy court's findings of fact under a clearly erroneous standard of review. FED. R. BANKR. P. 8013. The court reviews the bankruptcy court's conclusions of law *de novo*. *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1383 (11th Cir. 1990).

## III. Procedural History

On February 10, 2008, debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the Unites States Bankruptcy Court for the Northern District of Georgia. The bankruptcy court has not appointed a trustee and, pursuant to 11 U.S.C. §§ 1107(a) and 1108 and under the bankruptcy court's supervision, debtor remains in control of both the assets and business operations of the bankruptcy estate. On February 27, 2008, appellant appointed an official committee of creditors holding unsecured claims pursuant to 11 U.S.C. § 1102(a). The committee is represented by counsel and financial advisors pursuant to 11 U.S.C. § 1103(a).

On April 25, 2008, appellant filed a motion to appoint an examiner in the bankruptcy court. After hearing oral arguments on June 12, 2008, the bankruptcy court denied appellant's motion, holding § 1104(c) to be discretionary and finding the appointment of an examiner to be "potentially duplicative" of the committee's efforts. (Bankr. Order 1). Appellant timely filed the instant appeal on June 23, 2008. The court granted debtor's request for oral argument and heard arguments from all three parties on November 24, 2008.

**IV. Factual Background**[2]

Debtor is in the business of loaning money for real estate acquisition and development. Debtor raises operating capital primarily through the sale of bonds to the public, and several thousand holders of the bonds currently have claims totaling more than $142,000,000.[3] From the time of its March 18, 1996 inception until the fourth quarter of 2004, debtor exclusively loaned money to churches and other nonprofit organizations.[4] At the end of 2004, debtor began making loans to for-profit developers; debtor advertises that its for-profit loan business mirrors the goals of its nonprofit business by limiting its lending to projects that provide affordable housing.[5]

---

[2] Although this section of the court's order largely summarizes the parties' factual allegations, the court does not adopt the parties' allegations as the court's factual findings.

[3] In total, debtor has roughly $143,000,000 of unsecured claims; the $142,000,000 figure reflects the amount owed by debtor to holders of publicly issued bonds.

[4] Debtor succeeded Presbyterian Investors Fund, Inc., a nonprofit corporation founded in 1985; debtor incorporated itself as a for-profit corporation on March 18, 1996, and merged with Presbyterian Investors Fund, Inc., on December 29, 2000.

[5] Appellant questions the truthfulness of debtor's assertion, noting that, on the date of the bankruptcy filing, debtor's website advertised itself as a religiously oriented lender: "We provide investment opportunities for people who desire to honor God by investing in the growth of churches and other faith-based organizations. We have a 17-year tradition of, and commitment to, helping faithful people benefit financially from sound investments in God's work here on earth." (Appellant's Br. 5).

In 2004, eNable Business Solutions, Inc. ("EBS")[6] began managing and providing investment and financial advice to debtor. Debtor's agreement with EBS provides for fees to be paid to EBS according to debtor's gross revenues. Pursuant to that agreement, debtor paid EBS $1,085,332 in fees for the first nine months of 2006. Although debtor's financial standing weakened over the subsequent year, debtor paid EBS $1,239,174 in fees for the first nine months of 2007. During the same nine months, debtor sustained operating losses of $417,183; nonetheless, debtor also paid $517,931 in shareholder dividends over that period. In March 2006, debtor made a loan to Castleberry Properties, LLC, a company that is 50% owned by EBS.[7] Additionally, EBS manages Wellstone Investment Fund, LLC, a company that loaned debtor $1,589,000 in August, 2006.

Another entity, Wellstone LLC, features prominently in debtor's business network. Wellstone LLC is debtor's largest borrower; along with affiliated entities, it owed more than $77,600,000 at the time debtor filed for Chapter 11 bankruptcy. In September 2006, two of debtor's officers and two of EBS's officers each acquired 18.75% ownership interests in Wellstone LLC. After the

---

[6] EBS was formerly known as Cornerstone Capital Advisors, Inc.

[7] On September 30, 2007, Castleberry Properties owed $932,301 of principal on the loan.

officers acquired their ownership interests, debtor made over $6,500,000 in loans to Wellstone and its affiliates. The officers later divested their majority ownership interests.

Yet another entity, Cornerstone Group Holdings, Inc. ("CGH") merits a brief mention. At a time when two of debtor's directors also served as directors of CGH, debtor made a total of nine loans to subsidiaries of CGH worth more than $11,000,000.

## V. Discussion

The parties dispute whether § 1104(c)(2) is mandatory or discretionary. Appellant argues that the use of "shall" is mandatory, while appellees insist that the statute permits the bankruptcy judge to exercise discretion when a United States trustee requests the appointment of an examiner. The court agrees with appellant.

"It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)). The absurdity exception to the plain meaning rule "is a very narrow exception that comes into play only where the result adhering to the

plain meaning rule is not just unwise but is clearly absurd . . . and results in an absurdity that is so gross as to shock the general moral or common sense." *United States v. Nix*, 438 F.3d 1284, 1286 (11th Cir. 2006). A statute may be awkward, ungrammatical, and contain surplusage and still be fit for judicial enforcement. *See Lamie*, 540 U.S. at 534-36. Indeed, courts must "give effect to [a] plain command, . . . even if doing that will reverse the longstanding practice under the statute." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citations omitted).

The relevant text provides:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if--
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c).

On its face, the statute appears to require the appointment of an examiner if certain requirements are met. The only appellate court to consider the question reached the same conclusion as this court, explaining that "[t]he provision plainly means that the bankruptcy court 'shall' order the appointment of an examiner when the total fixed, liquidated, unsecured debt exceeds $5 million, if the U.S. trustee requests one."[8] *Morgenstern v. Revco D.S., Inc. (In re Revco, D.S., Inc.)*, 898 F.2d 498, 500-01 (6th Cir. 1990). Furthermore, every district court and nearly every bankruptcy court that has confronted the question has also read the provision to be mandatory on its face.[9] *See, e.g.*, *In re Loral Space & Commc'ns, Ltd.*, No. 04-CV-8645-RPP, 2004 WL 2979785 (S.D.N.Y. Dec. 23, 2004); *In re Schepps Food Stores, Inc.*, 148 B.R. 27 (S.D. Tex. 1992); *In re Vision Dev. Group*

---

[8] The court notes that the statute also requires that a plan not have been confirmed and that the proposed investigation be "of the debtor." 11 U.S.C. § 1104(c).

The *In re Revco* court interpreted 11 U.S.C. § 1104(b), an earlier but identical version of what is now § 1104(c). The Bankruptcy Reform Act of 1994 created a new § 1104(b) and, as a result, cases before October 22, 1994, refer to the examiner-appointment provision as § 1104(b), while subsequent decisions refer to § 1104(c).

[9] In at least two instances, bankruptcy courts have denied requests for the appointment of examiners that appear to fulfill the statutory requirements on the ground of laches. *See In re Bradlees Stores, Inc.*, 209 B.R. 36 (Bankr. S.D.N.Y. 1997); *In re Schepps Food Stores, Inc.*, 148 B.R. 27. The availability of an exception based on laches does not affect this case, however, as the court finds no evidence whatsoever of the sort of dilatory use of an examiner motion by the U.S. trustee that led those courts to reach into the realm of equity. Moreover, those cases explicitly note that the statute is facially mandatory, which is the foundational observation upon which this court's conclusion rests. *See In re Bradlees Stores, Inc.*, 209 B.R. at 38; *In re Schepps Food Stores, Inc.*, 148 B.R. at 29-30.

*of Broward County, LLC*, No. 07-17778-BKC-RBR, 2008 WL 2676827 (Bankr. S.D. Fla. June 30, 2008); *In re Collins & Aikman Corp.*, 368 B.R. 623 (Bankr. E.D. Mich. 2007); *In re UAL Corp.*, 307 B.R. 80 (Bankr. N.D. Ill. 2004); *In re Mechem Fin. of Ohio, Inc.*, 92 B.R. 760 (Bankr. N.D. Ohio 1988); *In re The Bible Speaks*, 74 B.R. 511 (Bankr. D. Mass. 1987); *In re 1243 20th St., Inc.*, 6 B.R. 683 (Bankr. D.D.C. 1980); *In re Lenihan*, 4 B.R. 209 (Bankr. D.R.I. 1980).

Because "the meaning of statutory language, plain or not, depends on context," the court must consider the text of § 1104(c)(2) in light of § 1104 as a whole. *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *see also Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1266-67 (11th Cir. 2006). Such a contextual analysis only strengthens the court's conviction; the mandatory nature of § 1104(c)(2) is particularly clear when compared with the discretionary nature of § 1104(c)(1). Whereas § 1104(c)(1) predicates the appointment of an examiner on the court's determination that it is in the "interests of creditors, any equity security holders, and other interests of the estate," § 1104(c)(2) only requires the debtor's fixed, liquidated, unsecured debts to exceed $5,000,000. "A provision for discretionary appointment, where the court is to consider the interests of parties in making its own determination whether an examiner is necessary, followed by a provision that only considers whether a dollar criterion has been

10

satisfied, is conclusive that the second provision is compelling on the court." *In re Schepps Food Stores*, 148 B.R. at 30; *see also In re Revco*, 898 F.2d at 501 ("The contrast [between the two sections] could not be more striking. . . . Unless [§ 1104(c)(2)] requires the appointment of an examiner in such a case, it becomes indistinguishable from [§ 1104(c)(1)]"); *In re UAL Corp.*, 307 B.R. at 84 n.2 ("[I]f paragraph (c)(2) were not mandatory, then § 1104(c) would have the following meaning: 'If specified debt is less than $5 million, it is in the court's discretion to appoint an examiner; and if specified debt is more than $5 million, it is in the court's discretion to appoint an examiner.'").

The bankruptcy court's interpretation ignores the plain meaning of the provision, including Congress's use of the generally mandatory term "shall." *See, e.g.*, *Lexecon*, 523 U.S. at 35; *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947). Indeed, the bankruptcy judge specifically rejected a mandatory reading of § 1104(c)(2): "Notwithstanding the language of the statute, in some circumstances the court retains the discretion to deny the appointment of an examiner." (Bankr. Order 2). The bankruptcy court relied on three cases for its holding: *In re Rutenberg*, 158 B.R. 230 (Bankr. M.D. Fla. 1993), *In re Shelter Res. Corp.*, 35 B.R. 304 (Bankr. N.D. Ohio 1983), and *In re GHR Cos., Inc.*, 43 BR. 165 (Bankr. D. Mass. 1984). As another court observed recently, however, the *Rutenberg*,

*Shelter Resources*, and *GHR* decisions "impermissibly ignore the impact of paragraph (c)(2)'s debt threshold alternative." *In re UAL Corp.*, 307 B.R. at 85.[10]

---

[10] On top of the cases' shared fatal flaw of ignoring the plain meaning of the statutory text, they are all distinguishable from the instant case. In the context of what the court called "truly unique" and "unusual" circumstances, *Rutenberg* held the "party in interest" clause to be discretionary when the debtor requests an investigation into *his own* "fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of [his] affairs." 11 U.S.C. § 1104(c); *In re Rutenberg*, 158 B.R. at 230, 231. This court finds a sharp distinction between a debtor asserting the right to demand an investigation of his own wrongdoing and the United States trustee requesting a similar investigation.

Reliance on *Shelter Resources* is misplaced for two reasons. First, the bankruptcy court in *Shelter Resources* rejected the request to appoint an examiner only after the "intended scope of the examiner's investigation ha[d] been rendered moot by the settlement and compromise of the shareholder's derivative action." 35 B.R. at 305. In this case, the intended scope of the examiner's investigation has not been rendered moot; there has not been a settlement or compromise related to any of the allegations of wrongdoing. More importantly, however, any relevance of *Shelter Resources* is seriously undermined by *In re Revco*, a subsequent appellate case controlling on the *Shelter Resources* court, which held mandatory the appointment of an examiner when the debt threshold is met. *See In re Revco, D.S., Inc.*, 898 F.2d 498 (6th Cir. 1990).

*GHR* also fails to sway the court. In that case, the court's analysis rested on its "thorough examination of the legislative history." 43 B.R. at 170. The court's concerns with that statement are twofold. First, well-settled principles of statutory interpretation permit courts to examine legislative history only when the statute is facially ambiguous. *See Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1247 (11th Cir. 2008). Neither the *GHR* court nor the bankruptcy court in this case (nor appellees, for that matter) have identified any facial ambiguity in § 1104(c) that calls for consideration of the legislative history. Second, regardless of the impropriety of a review of the legislative history, the *GHR* court's analysis is either incorrect or, at the very least, contradicted. *See In re UAL Corp.*, 307 B.R. at 85 ("[T]o the extent that the language of § 1104(c)(2) could be seen as ambiguous, the subsection's legislative history indicates that appointment of an examiner was intended to be mandatory in cases exceeding the debt threshold.").

Appellees insist that it is unnecessary to look beyond the plain meaning of the text to find discretion, as they argue that the phrase "as is appropriate"[11] endows bankruptcy judges with complete discretion over the scope—and, by extension, the existence—of the examiner's investigation. As one court confronting an identical argument explained, however, "[t]his reasoning is both grammatically and contextually wrong. In the provision, 'as is appropriate' modifies 'investigation.' The statute allows the court to determine the scope, length, and conduct of the investigation, rather than the appointment itself." *In re Schepps Food Stores, Inc.*, 148 B.R. at 30.

Appellees alternatively argue that the bankruptcy judge in this case did not *refuse* to appoint an examiner—rather, they insist, he merely *deferred* the appointment. Accordingly, appellees assert, the judge did not reject a mandatory reading of § 1104(c)(2), after all. In asking the court to reach this conclusion, however, appellees overlook a key aspect of the bankruptcy judge's order. The order specifically interprets the statute to provide the bankruptcy court with the very discretion that this court has determined does not exist: "Notwithstanding the language of the statute, in some circumstances the court retains the discretion to

---

[11] "[T]he court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate* . . . ." 11 U.S.C. § 1104(c) (emphasis added).

deny the appointment of an examiner." (Bankr. Order 2). Proceeding from that premise, the bankruptcy court found "that insufficient grounds have been presented to support such relief." (*Id.* at 1). Because the statutory requirements have been satisfied here, this court rejects both the bankruptcy court's conclusion and appellees' characterization of that conclusion as a mere deferral of the bankruptcy court's obligation to appoint an examiner.[12]

## VI. Conclusion

On its face, the plain language of the statute requires a bankruptcy judge to appoint an examiner in certain situations. This case presents such a situation: the bankruptcy court has not appointed a trustee; a plan has not yet been confirmed; the United States trustee has requested the appointment of an examiner; and debtor's fixed, liquidated, unsecured debts equal roughly $143,000,000, far exceeding the $5,000,000 threshold. The court shares the bankruptcy court's and appellees' concerns for efficiency and preserving the bankruptcy estate. Nonetheless, the statute is clear, and, "[w]hile Congress may not have foreseen the problems that arise when discretion over an appointment of an examiner is missing, that is not sufficient grounds for refusing to give effect

---

[12] Additionally, as appellant correctly observes in his reply brief, "To the extent that [the deferral] argument goes to the finality of the [bankruptcy court's] [o]rder, it conflicts with the Committee's statement . . . that it 'does not dispute [this] Court's jurisdiction over this appeal.'" (Appellant's Reply 6 n.2) (quoting (Appellee Committee's Resp. 1)).

14

to the plain meaning of the statute." *In re Schepps Food Stores*, 148 B.R. at 30 (citing *Union Bank v. Wolas*, 502 U.S. 151 (1991)). Because the alleged inefficiencies that will result from giving effect to the plain meaning of the statute do not rise to the level of "absurdity that is so gross as to shock the moral or common sense," the court will give effect to Congress's words. *Nix*, 438 F.3d at 1286.

For the foregoing reasons, the judgment of the bankruptcy court [1-3] is hereby **REVERSED** and the case is hereby **REMANDED** to the bankruptcy court with instructions to order the appointment of an examiner under 11 U.S.C. § 1104(c)(2).

IT IS SO ORDERED, this 5th day of December, 2008.

                                        s/*William C. O'Kelley*
                                        WILLIAM C. O'KELLEY
                                        Senior United States District Judge